**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1356-17T3

IN THE MATTER OF THE
ESTATE OF THEODORE A.
KACZMAREK, Deceased.

_____

Submitted October 31, 2018 - Decided November 28, 2018

Before Judges Accurso and Moynihan.

On appeal from Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. 216175.

Karen Horbatt, appellant pro se.

Kaplin Stewart Meloff Reiter & Stein, PC, attorneys for respondent Denise DeBlasio (Thomas D. Begley, III, on the brief).

Kelaher, Van Dyke & Moriarty, attorneys for respondent Barbara Lutz (Peter J. Van Dyke, on the brief).

PER CURIAM

Defendant Karen Horbatt appeals from the entry of summary judgment admitting decedent Theodore A. Kaczmarek's last will of November 12, 2014 to probate, directing the Surrogate of Ocean County to issue letters testamentary

to plaintiffs and co-executrices Denise DeBlasio and Barbara Lutz, dismissing defendant's caveat and counterclaim, and denying her request for counsel fees. Finding no error in any of the trial court's rulings, we affirm.

The essential facts are undisputed. Defendant was the decedent's niece by marriage. After defendant's aunt died, the decedent executed a will in 2009 leaving his entire estate to defendant. At the same time, and at defendant's suggestion, the decedent executed a revocable living trust agreement, designating defendant as the sole trustee. Both documents were drafted by a lawyer procured for the decedent by defendant. Within a few months of executing the trust agreement, however, the decedent expressed concern about losing control of his assets, and defendant suggested he seek advice from plaintiff DeBlasio, his long-time friend and financial adviser.

The decedent retained a new lawyer, William Hiering, who drafted a new will for decedent in February 2010 in which he left the sum of $200,000 to defendant, provided she did not challenge the will, $250,000 to plaintiff Lutz and divided the remainder of his estate between DeBlasio and another friend. Hiering, an experienced estates and trusts lawyer admitted to the bar in 1973, was not acquainted with the decedent, nor any of the parties, before drawing the decedent's will in 2010.

A-1356-17T3

Hiering testified at deposition that he drew four wills for the decedent, the first in 2010, the second in 2011, another in 2012 and the last one in 2014. Relying on notes he took in connection with each of the wills, Hiering recalled the decedent first came to him expressing a desire to revoke the trust and execute a new will. The decedent advised Hiering that the decedent's niece, defendant, was not a blood relative, and that he wished to divide his four million dollar estate among her and three close friends. Hiering testified the decedent, although then ninety-two, was still actively managing his stock portfolio, "day trading basically and doing very well at it." Hiering testified that after speaking at length with the decedent in connection with that first will, he had no concern whatsoever regarding the decedent's competence.

Hiering further testified his opinion of the decedent's competence never changed during the time he knew him. The decedent executed three more wills, altering the amount of his bequests among his beneficiaries and removing first one friend and then defendant. Specifically as to defendant, the 2011 will increased her share to eighty-five percent of the estate, the 2012 will reduced it to fifteen percent and the 2014 last will omitted her entirely. That last will divided the decedent's entire estate equally between plaintiffs.

3 A-1356-17T3

Regarding execution of that 2014 will, Hiering testified he noticed no decline in the decedent's mental capacity, describing him as "still . . . sharp. Pretty old, but he was still sharp." Hiering testified, however, "that physically, [the decedent] had slowed down." Regarding the decedent's decision to leave his entire estate to plaintiffs, Hiering testified "he expressed that he had no one else, that these were people he cared about." The decedent explained that his third friend had moved away and defendant "is not a relative, it's his wife's relative."

Defendant conceded both plaintiffs, who, unlike herself, lived nearby, assisted the decedent on a regular basis. DeBlasio helped him with his bills and home repairs and Lutz did his grocery shopping and occasionally his laundry and both drove him to appointments and provided him companionship. Defendant claimed, however, that DeBlasio abused her position as the decedent's financial adviser, that Lutz was motivated by greed and that both exercised undue influence over him. She presented an expert report by a psychiatrist, Daniel P. Greenfield, who opined, on the basis of the decedent's medical records, that "[i]t is likely that [his] apparent history of several years of dementia leading up to his death . . . affected his decision-making capacity and competency" in regard to the 2014 will and "rendered him less able to resist

4

'undue influence,' if it actually occurred, notwithstanding characterizations of him as firm, rigid, set in his ways, knowing what he wanted, and the like."

Ruling first on plaintiffs' motion to strike the report as a net opinion, see Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384-85 (2010), Judge Roe acknowledged the expert's qualifications, but concluded his failure to identify the specific facts in the record on which he based his opinions, see Townsend v. Pierre, 221 N.J. 36, 53-54 (2015), or to express any opinion held to a reasonable degree of medical certainty, see Johnesee v. Stop & Shop Cos., 174 N.J. Super. 426, 431 (App. Div. 1980), rendered the report unreliable and inadmissible, see Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super. 289, 300 (App. Div. 1990) (explaining "expert testimony is excluded if it is based merely on unfounded speculation and unquantified possibilities").

Reviewing the competent evidence on the motion for summary judgment, Judge Roe concluded there was nothing in the record to support a diagnosis of dementia until shortly before the decedent's death in 2016, over a year after he executed his 2014 will. Further, defendant acknowledged at deposition she "knew nothing of the circumstances surrounding the execution of the 2014 will or any alleged improprieties" in its genesis or execution, and conceded plaintiffs were long-time friends of the decedent and appropriate beneficiaries. The judge

found nothing to contradict attorney Hiering's opinion that the decedent possessed testamentary capacity when he executed his last will in 2014, and that defendant's own attempt to have the decedent execute a new power of attorney in her favor shortly before his death belied her later assertions that the decedent was incompetent.

Judge Roe similarly rejected defendant's claims of undue influence as without support in the record.  Acknowledging that plaintiffs enjoyed "a close personal relationship with the decedent,"[1] the judge found nothing in the record suggesting "questionable or suspicious circumstances" and "certainly . . . no evidence that they occupied a dominant position over the decedent."  Assuming that defendant had presented sufficient evidence to shift the burden to plaintiffs, see In re Estate of Stockdale, 196 N.J. 275, 303 (2008), which she did not, the judge found the record made plain "any influence the plaintiffs had was not undue," see In re Blake's Will, 21 N.J. 50, 56 (1956) (explaining "influence is not undue in this regard unless it constitutes moral or physical coercion destructive of free agency.  Even persuasion, much less mere suggestion, is not

---

[1] Acknowledging that plaintiff DeBlasio had served as the decedent's "financial adviser," the judge nevertheless rejected defendant's claims of a confidential relationship because the summary judgment record lacked specific facts explaining the term, DeBlasio's duties or how the decedent may have relied on her.

A-1356-17T3

undue influence either in the legal or the moral sense if freedom of will remains intact.").

The judge further found defendant had not presented a prima facie case of fraud, see Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005), and the doctrine of unjust enrichment, see EnviroFinance Group, LLC v. Envtl. Barrier Co., LLC, 440 N.J. Super. 325, 350 (App. Div. 2015), had no applicability to this will contest. Because defendant failed to provide either the order or the transcript of the court's oral statement of reasons denying her claim for attorney's fees, we are unable to assess the merits of her claim, and thus do not consider it. See Cipala v. Lincoln Tech. Inst., 179 N.J. 45, 55 (2004) (affirming this court's refusal to address an issue based on appellant's failure to include documents necessary for its review in the appendix).

Having considered defendant's arguments in light of the record and the applicable law, we affirm in all respects based substantially on Judge Roe's careful and comprehensive opinion delivered from the bench on October 4, 2017.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1356-17T3